from the Federal Defender's Office on behalf of Mr. Alexander. Your Honor, the question before this Court is whether Congress intended this statute to transform every run-of-the-mill state case involving passing a forged check into a federal crime and an aggravated crime at that, one with a mandatory add-on term of imprisonment. Your Honors, we're not dealing with stolen identification cards here or the creation of fake identification cards, which would have been aggravated identity theft. We are dealing with the passing of a forged check, which Mr. Alexander was punished for, and the question is whether there should be a supplemental mandatory additional two years on top of that. This is a somewhat unusual statute. The government's favor, as it's been argued on and on, we have the language at the beginning, any name or number. In addition, we have four examples. When you say language, language in what? I'm sorry, Your Honor, I'm referring to the language in 1028d7d, which is the definition of means of identification. Okay, but you have like, okay, an access device is just one example of a means of identification. So regardless of whether the access device subsection applies, how do you get around the broad definition of means of identification, which is the first three subsections of Section 1028d7? Yes, Your Honor, that's what I'm saying. We have, in some sense, conflicting parts of the statute. And what you need to do is find some way to reconcile them. And if you reconcile them the way the government says you're not reconciling, you are tossing out an exception that Congress specifically chose to include. When Congress defined access device in D7d as part of the D7 definitions, it could have set forth a new definition. Instead, it chose to specifically incorporate the language of 1029e, to bring that in as if it set forth fully therein. And Congress had to have a reason for doing that. Well, my question is, the statute says that names and routing numbers by themselves are means of identification. If Congress meant to exclude names and numbers on checks, why wouldn't it have said so? But it did, Your Honor, because in the language pulled over from 1029e, it says except for a transfer originated solely by paper instrument. So it brought that exception in, and we submit this transaction falls within that exception. And if you then look to the any name or number language, you totally eviscerate this exception, and it is a nullity. And that is contrary to what all of our case law tells us. When we interpret a statute, you don't take language that Congress put in for some reason and have it never have an effect. But what if you said that this is not an access device, but it's covered under the other parts of the statute? Then when, Your Honor, I would say, does the exception ever apply? And the answer is never. If you follow that, Your Honor, I'm going to try another example for a moment, something that I submit is structurally identical to 1028d7. Imagine a statute, Your Honor, that's an agricultural statute, and it says any fruit, including any apples, any stone fruit, or any peaches but not Alberta peaches. And the government brings to you an Alberta peach and says, okay, we can't talk about this. This peach is covered by this statute. No, it's not covered as a peach because it's under an exception, but it's covered as a stone fruit, and it's covered as any fruit. And I think this Court would rightly say, but then when does the exception apply? Congress meant to leave out Alberta peaches, and Congress meant in D7d to leave out transfers originated solely by paper instrument. Well, but another, I don't, well, I think this may, there isn't anything really published on this exactly, but, you know, an argument can be made, and I think this is what the government, that this is a straightforward question of statutory interpretation, readily answered by the plain language of 1028d7 defining means of identification. And so even if a counterfeit check originates a transfer solely by a paper instrument, such that the check is not an access device under 1029e1, a victim's name and banking numbers as stated by Judge Nelson contained within a counterfeit check are still means of identification under the broader language of 1028d7. So it, you know, it seems that that lines up as a pretty strong statutory construction argument. Well, Your Honor, it would if the Court or the government could point to any circumstance where the but not including language ever had any effect. And I submit they cannot. And unless they can, this, it's a state statutory construction argument but going the other way, Your Honor, because there is no, that language is rendered a nullity. And we've been told time and time again, you don't interpret a statute in a way to render a nullity. So your argument, as I understand it, is that if a means of account access used on a paper check is deemed to fall under one of the three subsections of 1028d7, then the exclusion access device subsection is given no effect. And so that's why we can't construe it that way. Is that your argument? Essentially, I put it this way. I'm saying that when Congress said any, it means, but you have to pay attention to the exceptions we've set forth. And we set forth an exception in D, and if something falls within that exception, you can't get around that exception by saying, well, it also falls within any, because otherwise the exception has no meaning. Well, in other words, your argument is that, you know, the parenthetical phrase at the end of the definition, right, that excludes paper originated transaction, you're saying that exception applies to the entire statute, right? I'm saying it has to. To all of 1028. I'm saying it has to apply sometime. And for it to apply anytime, it means that if something fits within that exception, that accepts it from the entirety of the statute. So, yes, Your Honor, that is what I'm saying. And I, you know, certainly sense some concern with that, but I've searched, Your Honors. I see no other statute that a court's been faced with where you have this sort of structure of an any, and then one of the instances has this kind of exception. So not only don't we have anything right on point, I don't see anything structurally comparable, but I submit that if you're going to assume, if you're going to treat. The good news is you don't have a case against you, except you don't have a published case against you. So that is the good news. That's the good news. We're talking on a clean slate how we interpret this. But I also believe the good news is that we have time and again the language that you can't create, interpret language so that there's a nullity to an entire clause. Now, the government has two backup positions. One is, well, even if it isn't a nullity, and I've responded to those arguments in my reply brief, one of their arguments points to using 1029 as one of the enumerated felonies in relation. And what that ignores is that this language appears twice. It appears in 1029E, and it appears by incorporation in 1028D7D. And the instant example they gave of it not being a nullity, it's the language in 1029E that would mean there is no crime of access device fraud, and the language in 1028D7D would still never be having any effect. Their other part of that backup argument is that, well, it just means we can't charge it under paragraph D. Well, this statute was designed to define a crime. If you're going to accept the position that it can't be a nullity, that is a non-response. It's no response to say, well, you'll have to charge it under D7 plain or D7A, B, or C, but it's still going to count as a means of identification. That totally undoes what Congress is doing here, which is defining a crime. Their final backup position is that even if you agree with us regarding statutory construction here, this does not come within the exception. And I'll first want to inquire the court. The government filed on Thursday a 28J letter, and in my response, I indicated that both for time and space purposes, I feel the need to file a brief supplemental response to that on my 28J letter. And so I'd ask the court if I may have leave to do that. Well, we will conference after this. If we feel that we need to, if it's something that would be helpful to the court, we'll notify the parties. Otherwise, we're not going to grant that at this point. That will be something we'll discuss. That's fine, Your Honor. But we take your request under submission. Okay. But given the lateness of their position, and I believe the response to get it fully is a fairly complicated one, but the problem is they're trying to tie it to a different statute with the definition of electronic funds transfers that is not linked to the definition of originated by paper instrument in 1029E. And so it is, frankly, simply irrelevant whether after Mr. Alexander originated this transfer by handing this check to Wal-Mart that is subsequent to that, Wal-Mart did things that brings it within the statute of electronic funds transfers, thereby giving consumers various consumer rights, and is simply irrelevant to the question of whether this comes within the subsection, excuse me, the exception in 1029E incorporated into 1028D7D. So even if they are right that this transaction ends up due to the regulations they cite in Thursday's letter as being an electronic funds transfer, that does not affect whether it comes within the exception. So if you accept our position that the exception has to have some meaning, then that response that somehow it doesn't, that we are not within that exception, A is wrong. And B, as I argued in our reply brief, is an argument that this court, one hates to use the words may not, but the Supreme Court has said may not consider on appeal because it was an argument that was not presented to the district court. The district court didn't rule on that theory. And therefore, under the Torello case and the McCormick case that the government, in honesty, cited is a different theory than the one that the trier of fact considered and it would be improper to affirm on the grounds that, well, there's sufficient evidence to support this other theory when that other theory wasn't considered by the trier of fact. So if I may. Would you like to reserve the balance of your time? Thank you. Good morning, Your Honors, and may it please the Court. Good morning. My name is Michael Morgan. I represent the United States on this appeal. The statutory construction issue is relatively straightforward and the statute is not relatively, it is, in fact, unambiguous. Well, I'll tell you what about Mr. Zarkey's argument that bothers me the most is that his argument that, well, it really does away, you know, with that exception, makes it surplus, right? I don't think it makes it surplus, Your Honor. I think what it does is simply is that across statutes, it makes sure that Congress has a uniform definition of an access device, such that if a paper instrument falls within the exclusion for access devices, it's not an access device. But Congress didn't say no paper checks regardless of whether or not it's an access device. Congress specifically included any name, any number, and specified a routing number. I'm perplexed as to what other document a routing number is going to appear on if not a check. So I think that's the answer, this is the straightforward answer, is that Congress simply intended to have a uniform definition of access device across 1028 and 1029. And the statute, like I said, the statutory text makes that clear. And if you actually just go and look at the history of the statutes, you can actually see what Congress is doing. The first statute that's enacted is the access device fraud statute. Fourteen years later or so, Congress enacts the original identity theft statute, and this is key. In that statute, they criminalize, they make it a crime to commit any felony, state or federal, by use of a means of identification, any felony. Passing a forged check in Washington is a felony. So it would be absurd to think that in such a statute, with such a broad sweep, that somehow or other Congress is meaning to carve out this kind of, this class from the kind of crimes that are prosecutable as identity theft. And I think that's the fallacy of the defense's argument, is they're focusing on the access device fraud statute and looking at the harms it's meant to prevent versus the identity fraud statutes, identity theft statutes, and the harms that they're meant to prevent. Could you give us an example? As he suggests, he could think of no example where 1029E would apply. The government basically is saying that every ordinary check fraud offense is a federal identity theft case. Can you give us an example of something that would follow under 1029E? Well, I mean, the short answer is that I've thought about this, and I think that in candor, I have to say no. And the reason is the following, is that I can certainly think of access devices that would qualify as an access device, but that would not qualify as a means of identification. However, because of what the nature of a means of identification is, it has to be something with a name or number that's going to link you to a specific person. Any access device that is going to be a means of identification, by the nature of the access device, take a cell phone, for example, which could be an access device, but the way you're going to link it up to somebody is through the ESI number. It's going to be a number. It's going to be a unique number. What about like, okay, I have a bank card that's got my picture on it, and then the credit card numbers. So it doesn't have my name, but it's got my picture. It's got your picture, and that would fall under probably sub C, which is probably not really biometric data, but it's got a number. It's got your account number. So even though it's clearly an access device, it's going to have a number, and that number is in conjunction with other information is what's going to link it up to you. Right. So that's sort of the problem is that because of the definition of means of identification being so broad, there's simply, I am unaware of any type of access. So would that be a means of identification, or would it be an access device? It would be both, and it would be a means of identification under multiple provisions of the statute, and that's the key is that something can qualify as a means of identification under sub A, sub B, sub C, or sub D. It can meet multiple definitions. It could not meet some definitions, but meet other definitions. And the statute is specifically drafted to be as inclusive as possible. To read the exception in sub D as excluding any name or number on a check, you're reading out subs A and sub C, and also the prefatory language, any number, which by definition is an account number. But then isn't 1029E a nullity? It's not a nullity, Your Honor. No one can think of anything to which it applies where A, B, and C don't also apply. Why do we have it? It's what I would consider to be belts and suspenders is that Congress is making sure that anything that can be a name or a number, again, any name or number, including but not limited to these items. So the fact that something may or may not qualify as an access device can't be determinative of whether or not it qualifies as a name or a routing number. D simply can't trump the rest of the statute. Whatever could. In other words, I still don't have an answer. You couldn't give me one. Your counsel couldn't think of an example. No, I've conceded, Your Honor, that because of the nature of the definition of means of identification, I cannot think of a particular access device that's going to meet the definition of access device that's not also going to have a unique number on it. So it's going to meet D, but it's also going to meet A. There's never going to be a situation where something only meets D but doesn't meet the rest of the statute. There's just never going to be that situation. Well, does the legislative history give us any clue as to why it was necessary to pass it? Well, the legislative history vis-a-vis the identity theft statutes make crystal clear. Well, no, I understand the identity theft. That's the easy one. The hard one is the access. Yes. The access device fraud statute says for purposes of defining the crime of access device fraud, the crime set forth in 1029, Congress did not mean to criminalize the simple act of passing a bad check. To say that you can't prosecute passing a bad check as access device fraud is not to say you can't prosecute passing a bad check as bank fraud, which is a specified enumerated penalty or triggering crime of aggravated identity theft. And since we can prosecute passing a bad check as bank fraud, and since the aggravated identity theft statute and the underlying identity theft statute make crystal clear that Congress wanted any crime, federal or state, that uses, you know, that you steal someone's identity to commit that crime to be punishable, that legislative history makes clear that the definition of means of identification is to be swept broadly, not narrowly. And so that, and I think, again, you have to look at the different statutes. So would it have been better drafted without that exclusion? I don't think so. I don't think they mean to, because in fact they don't draft the exclusion into the definition. They simply say we're defining access device as defined in Section 1009 or 1029. All they want to do is just say we're not going to change the definition of access device fraud for means of this statute. We're just going to have parallel definitions. But by doing so, there's certainly no indication that Congress meant to carve out this class of crimes. I mean, it just doesn't make any sense. And again, the legislative history makes clear that any use of a means of identification to commit a fraud, Congress meant to have that punishable, whether as regular identity theft or in the case of a specified crime such as bank fraud, aggravated identity theft. To the extent that the Court is concerned that there's never going to be a situation where there's an access device that somehow or other is not going to meet any other definitions, I think Congress was just trying to be over-inclusive. But there's certainly no indication that Congress was trying to limit this particular type of crime from the ambit of the identity theft statutes, and I think that's the key. Having said all of that, there remains just the reality that this wasn't, as a matter of law and fact, a transaction originated solely by paper instrument. This, in fact, was a transaction initiated by an access device, namely the access device at Wal-Mart that stripped the account number, routing number, and created an electronic funds transfer that caused the ACH debit, which is listed on the back office receipts from Wal-Mart, not to mention the — The checks are like that. They're all access devices. Your Honor, that's actually incorrect. A check that's negotiated properly is governed by UCC Articles 3 and 4. Negotiated properly. The difference is whether it's negotiated properly or improperly? It has to do with the means of presentment. If the check is presented digitally or electronically with the actual check, it's governed by the UCC. It's what the recipient does with it. Your Honor, respectfully — It has to do with what the — I'll call them the criminal does, right? The criminal still gives Wal-Mart the piece of paper. Yes, and if Wal-Mart — Before, you could have, you know, counterfeit numbers and all that, but still the transaction itself is paper-originated, isn't it? No, it is not, Your Honor, as a matter of — The transaction is between the customer and Wal-Mart. Actually, the transaction is between the customer, Wal-Mart, and the banks because that's what's creating the payment. No, because then there's a second transaction between Wal-Mart and the bank when the bank presents the check. Your Honor, that's not how — There's no transaction with the bank until there's a presentment. That's not, in fact, how this works, Your Honor. This is an electronic funds transfer, not a presentment. Presentment — Well, that was a decision of Wal-Mart, not of the, you know, the presenter of the check. That's — well, A, that's factually not — No, he didn't go up to, you know, like an ATM machine and put the check into an ATM machine. He'd give it to a cashier at Wal-Mart. No, it was actually given and stripped through a machine. This is — Well, that was done by Wal-Mart. Well, it was done with his consent. That's the whole point of — Because he consented, doesn't mean it was — Your Honor, this is — I mean — I'm saying your definition makes every paper transaction — It's not my definition. It's Congress's definition. Well, it's a definition. Your argument applies to this section. It makes every — it does away with the paper transaction. It does not, Your Honor. Your Honor, if a check is negotiated, if the check is taken to a bank and tendered and goes through the negotiation process that's governed by UCC Articles 3 and 4, that's a check that's — that's a transaction that is originated solely by paper instrument. However, if a — That's the language of the statute, initiated solely by paper instrument. If, however, the transaction is an electronic funds transfer, as that term is statutorily and regulatorily defined, it is defined — it is defined as a transaction that does not originate solely by paper instrument. I know that, but this was originated by paper? It's not like, you know — It simply was not, Your Honor. It's not like a debit card or, you know, gift card or something like that. He — I don't understand that, why you say it's not a piece of paper that starts it. Well, then perhaps Mr. Zarke is correct because it — the need for supplemental briefing, if you really want to reach this issue. But this is just — there's — frankly, there are two separate strands of authority that govern these types of transactions. One governs checks and one governs EFTs, electronic funds transfers. This, factually, if you look at the record, is an electronic funds transfer. The check was electronically converted and an ACH — By Walmart. Actually, by Walmart's processor. But — They whacked it on behalf of Walmart. Well, they whacked it on behalf of both people to facilitate the transfer. Because the presenter checked, knew nothing about it, didn't care about it, you know, didn't care what processor it was, didn't care what Walmart did with the check. Didn't do it on behalf of the presenter. How can you say they did it on behalf of both? Because you don't have to accept the EFT. It has to be done with the check presenter's consent. That's in Regulation E, which governs these transactions. But again, this — you don't need to reach this issue — There's no check presentment here. It's just, you know, it's a transaction. Exactly, Your Honor. There is no presentment. That's the whole point. If there's no presentment, it's not a check. Between Walmart and the defendant, right? The defendant used a counterfeit check to institute — Of course they're presented.  I'm understanding this discussion to be that you're saying what the statute says is that is different than what people that have been writing checks for a long time might see as a paper instrument. That is correct, Your Honor. And I think that's part of the problem here is that this case was built — the defense theory was built on a faulty factual premise, basically trying to incorporate old-fashioned check writing into newfangled EFTs. And it's actually not that newfangled. The Electronic Funds Transfer Act was enacted in 1978. But regardless of whether or not — even if you want to assume that it was a traditional check, we still went under the language of the statute. Because the statutory language, again, and the purpose of the identity theft statutes, again, was to criminalize precisely this type of behavior. If the Court has no further questions. Judge? No, I'm fine. There don't appear to be additional questions. Thank you. Your Honor, turning to Mr. Morgan's final comments first. As I indicated, I believe this Court cannot address a theory that was not ruled on by the District Court under the authorities I cited before McCormick and Torello, in fact, at the government site. Substantively, the transaction was originated when Mr. Alexander handed the check. That's an origination. Things occurred subsequent to that. And things occur subsequent to any handing over of a check. Those don't change the question of how it originated. All right. But just because — do you agree that just because there is a paper instrument, that isn't enough? Are you just saying just because it's a paper check, that's enough? I'm saying when a transaction is initiated by paper instrument, that is enough to come within the exception, yes. And then turning to Mr. Morgan's earlier comments, there is nothing wrong with a statute having surpluses, i.e., to some extent, having overlapping provisions, belts and suspenders, as Mr. Morgan said. But when one of those provisions carves out another specific exception, there is something wrong with ignoring that exception. And that's what we're trying to say in terms of our argument. Judge Yoshimi used the word surplusage. I used it a couple of times in my brief. And sometimes courts use it when they mean nullity. But my fundamental point is one pertaining to nullity. Not to the fact that things are overlapping and, therefore, some words might be unnecessary, but to whether they are rendered to have no effect whatsoever. And so our point is, and also, Your Honor, you referred to 1029. What we're actually saying is the nullity is in 1028d7d, which incorporates the language of 1029e. And the government concedes it cannot point to a circumstance where that exception would ever have any effect. And I submit that is effectively a concession that under proper rules of statutory interpretation, a check which, excuse me, a means of identification, something which would otherwise be a means of identification because it is a name or number on a paper instrument, is not a means of identification under 1028 when that means of identification, excuse me, when that paper instrument is what originates solely a transaction. And for those reasons, Your Honor, I would ask the Court to interpret the statute as we said, hold that the government's alternate theory A cannot be considered, but if it were to be considered, is factually incorrect. All right. Thank you for your argument. Thank you. This matter will stand submitted.
judges: Nelson, Tashima, Callahan